J-A02001-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: K.P.F., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.F. AND D.F., GRANDPARENTS | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1135 WDA 2024 |

Appeal from the Order Entered August 9, 2024
In the Court of Common Pleas of Blair County Orphans' Court at No(s):
CP-07-AD-0000032-2021

| | | |
|---|---|---|
| IN RE: ADOPTION OF: L.T.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.F. AND D.F., GRANDPARENTS | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1136 WDA 2024 |

Appeal from the Order Entered August 9, 2024
In the Court of Common Pleas of Blair County Orphans' Court at No(s):
CP-07-AD-000032A-2021

BEFORE:  KUNSELMAN, J., MURRAY, J., and BECK, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED: March 26, 2025**

In this consolidated matter, after remand from this Court, K.F. and D.F. (Paternal Grandparents) appeal from the orphans' court's August 9, 2024 order, which reentered the court's previous order denying Paternal Grandparents' petitions to terminate the parental rights of A.B. (Mother) to

K.P.F., born in 2014, and L.T.B., born in 2010, (collectively, the Children) and the parental rights of N.F. (Father) to K.P.F.[1]  After review, we affirm.

The record discloses the following background.  Father and Mother met in a halfway house and began dating.  From 2014 or 2015 to 2018, Mother and Father owned a business for painting and remodeling houses and worked for Paternal Grandfather.  They resided with the Children in rental homes owned by Paternal Grandparents.  Paternal Grandparents, especially Paternal Grandfather, spent time with the Children.  Paternal Grandparents provided some financial assistance to Mother and Father, who had an on and off struggle with drug addiction.

In 2015, the Children and an older half-sibling were removed from the home by Butler County's Children, Youth and Families after a welfare check.[2] Mother initiated the check because the older sibling and L.T.B. were found undressed together in the middle of the night.  The Children eventually resumed living with Mother, and the older sibling returned to his original residence with Maternal Grandmother.

_____

[1] To clarify, Mother is the biological mother of the Children.  Father is the biological father of K.P.F.  L.T.B.'s biological father is unknown, but Father acted as L.T.B.'s father.  *See* N.T., 12/22/22, at 104.  Father agreed to relinquish his parental rights to K.P.F., if Mother's rights were terminated.  *See* N.T., 10/18/22, at 2-3.  Appellant K.F. is Father's father and K.P.F.'s grandfather.  Appellant D.F. is K.F.'s wife.

[2] The Children's sibling is not the subject of this appeal.  The record indicates that he is no longer a minor.

During 2018 and 2019, Mother continued struggling with drug addiction. Mother moved with the Children to Altoona where Maternal Grandmother lived. Mother failed to enroll L.T.B. in school; Maternal Grandmother eventually enrolled him. Mother was arrested in Blair County. Blair County Children, Youth and Families ultimately took custody of the Children and placed them with Maternal Grandmother. Paternal Grandparents and Father were uncomfortable with this placement because the Children's older sibling still lived with Maternal Grandmother.

On September 18, 2019, the Children were placed with Paternal Grandparents, who became their permanent legal custodians. Mother and Father were permitted to have fully supervised visitation, as mutually arranged with Paternal Grandparents. From September 2019 to the filing of the termination petitions, Paternal Grandparents provided for all the Children's medical and educational needs. Mother and Father did not provide any financial assistance, food, clothing, or shelter to the Children, except for gifts.

From approximately August 2020 to September 2021, Mother was incarcerated. She wrote to the Children about once a week. After establishing phone contact with them in April 2021, she also spoke to them on the phone. From September to November 2021, Mother resided at Renewal halfway house/rehabilitation center (Renewal) and communicated with the Children by phone and letters. Mother completed inpatient treatment during her

incarceration and at Renewal, and, upon release, continued counseling with CenClear. She was successfully discharged in August 2022.

Paternal Grandparents filed petitions to involuntarily terminate Mother's and Father's parental rights on November 17 and 18, 2021. A termination hearing was held on October 18, 2022, December 22, 2022, and February 8, 2023, and the Children were interviewed on December 14, 2022. On February 13, 2023, the court denied the termination but encouraged continuing the placement with Paternal Grandparents, who then appealed.

We remanded the case because it was unclear if the Children were appointed appropriate counsel to represent their legal interests. Attorney Maryann Joyce Bistline was present throughout the termination proceedings, but it was unclear what role she undertook on behalf of the Children. We instructed the orphans' court to determine if Attorney Bistline was able to represent both the best and legal interests of each child without conflict. If there was no conflict, the court was to reenter its order denying the termination. If there was a conflict, the court was to appoint separate legal counsel and conduct a new termination hearing.

On March 6, 2024, the court conducted a hearing on remand, during which Attorney Bistline testified. The next day, the court issued an order directing Attorney Thomas K. Hooper to act as legal counsel for the Children and to meet with them to determine their legal interests. Attorney Hooper met with the Children and wrote a letter to the court dated June 20, 2024.

On June 26, 2024, the court issued an order appointing Attorney Hooper to act as legal counsel and Attorney Bistline to act as guardian *ad litem* for the Children. The court conducted a final hearing on August 2, wherein Paternal Grandparents and Mother testified; the Children were also interviewed. Attorney Bistline and Attorney Hooper submitted reports to the court.

On August 9, 2024, the court reentered its previous order denying the termination petitions, relieved Attorney Hooper of his duties as counsel for the Children, and appointed Attorney Bistline as guardian *ad litem* and counsel.

Paternal Grandparents timely filed this appeal.[3] They present seven issues for our review, which we reorder for ease of disposition:[4]

1. Whether the Trial Court erred and/or grossly abused its discretion in finding that Petitioners have failed to prove by clear and convincing evidence that their Petition for Involuntary Termination of Mother's Parental Rights should be granted pursuant to 23 Pa.C.S.A. § 2511 (a)(1) as the evidence of record supports termination?

2. Whether the Trial Court erred and/or grossly abused its discretion in finding that Petitioners have failed to prove by clear and convincing evidence that their Petition for Involuntary Termination of Mother's Parental Rights

---

[3] This Court consolidated the appeals for each child *sua sponte* on October 8, 2024.

[4] Paternal Grandparents' issues and the arguments raised in their brief focus on Mother, not Father. Presumably this is because, as mentioned in Footnote 1, Father agreed to relinquish his parental rights, if Mother's rights were terminated. Because Paternal Grandparents' issues and arguments relate to Mother, we likewise focus our analysis on Mother.

should be granted pursuant to 23 Pa.C.S.A. § 2511(a)(2), and the record supports termination?

3. Whether the Trial Court erred and/or grossly abused its discretion in finding that while Mother did not provide essential parental care, control, or subsistence, causes of incapacity can and will be remedied?

4. Whether the Trial Court erred and/or grossly abused its discretion in both considering, and permitting evidence to be presented over objection, Mother's efforts to remedy the conditions described in the Petition for Involuntary Termination when they [were] initiated subsequent to the notice of filing the Petition?

5. Whether the Trial Court erred and/or grossly abused its discretion in denying the Petition for Involuntary Termination of Mother's Parental Rights due to finding a bond between the Children and Mother but failing to then consider:
   a. Whether the bond indicates a beneficial relationship that should be preserved;
   b. Whether the bond with the Petitioners is stronger than the bond with Mother;
   c. The substantial damage done to [the] Children by a prolonged, unhealthy, pathological bond with Mother as it affects the Petitioners' ability to provide the necessary love, care, and stability that the Children have needed;
   d. Whether termination was still appropriate when a bond was found as termination provides the Children w[i]th permanency necessary for the fulfillment of their potential in a permanent, healthy, safe environment?

6. Whether the Trial Court erred and/or grossly abused its discretion in finding that a denial of the Petition for Involuntary Termination of Mother's Parental Rights will

allow the Children to remain in their home where they have formed a loving bond, and are provided a safe, stable, and structured environment when the denial pervents [sic] the same.

7. Whether the Trial Court erred and/or grossly abused its discretion by finding that there is no conflict of interest in the best and legal interests of the Children, and the dual role of Attorney Bistline in acting as Guardian ad litem and legal counsel for the Children?
    a. Whether the Trial Court determined that Guardian Bistline could, without conflict, represent both the best and legal interests of the Children?
    b. Whether the court's March 7, 2024, order appointing Attorney Thomas Hooper failed to satisfy its obligation to appoint appropriate legal counsel to represent the Children?
    c. Whether the court erred and/or abused its discretion in its August 9, 2024, order finding no conflict exists between the legal interests of the Children?

Paternal Grandparents' Brief at 4-8 (capitalization adjusted).

We begin with our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

- 7 -

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Our Supreme Court has repeatedly stated that in termination cases, deference to the trial court is particularly crucial. *In re Adoption of L.A.K.*, 265 A.3d 580, 597 (Pa. 2021); *see also Interest of S.K.L.R.*, 256 A.3d 1108, 1124 (Pa. 2021) ("When a trial court makes a 'close call' in a fact-intensive case involving . . . the termination of parental rights, the appellate court should review the record for an abuse of discretion and for whether evidence supports the trial court's conclusions; the appellate court should not search the record for contrary conclusions or substitute its judgment for that of the trial court."). The abuse-of-discretion standard in termination cases "is a highly deferential standard and, to the extent that the record supports the court's decision, we must affirm even though evidence exists that would also support a contrary determination." *In re P.Z.*, 113 A.3d 840, 849 (Pa. Super. 2015) (citation omitted); *see also T.S.M.*, 71 A.3d at 267. Furthermore, "[t]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

We observe that:

> Parents enjoy a fundamental right to make decisions regarding the care, custody and control of their children. It cannot be denied that significant and permanent consequences for both the parent and child can follow the

termination of parental rights, as there is an undeniable importance in a child's relationship with a biological parent.

*L.A.K.*, 265 A.3d at 591 (internal citations omitted).

Accordingly,

> In recognition of the gravity attendant to the termination of parental rights, the moving party must establish the statutory grounds by clear and convincing evidence; that is, evidence that is so clear, direct, weighty and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Id.* at 592 (citation and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child . . . .

*In re C.M.K.*, 203 A.3d 258, 261-62 (Pa. Super. 2019) (citation omitted); *see also Interest of M.E.*, 283 A.3d 820, 830 (Pa. Super. 2022).

Paternal Grandparents' first issue challenges the orphans' court's decision under Section 2511(a)(1). That subsection provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of

> relinquishing parental claim to a child or has refused or
> failed to perform parental duties.

23 Pa.C.S.A. § 2511(a)(1).

Here, the termination petitions were filed in November 2021, thus the statutory timeframe to examine Mother's actions began in May 2021. We have clarified, however, that "[a]lthough the six month period immediately preceding the filing of the petition is most critical to the analysis, the court must consider the whole history of the case and not mechanically apply the six-month provision." **In re I.J.**, 972 A.2d 5, 10 (Pa. Super. 2009) (citation omitted). "The trial court must examine the individual circumstances of each case and consider all of the explanations of the parent to decide if the evidence, under the totality of the circumstances, requires involuntary termination." **Id.** (citing **In re B.,N.M.**, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005)).

Regarding parental duties, we have explained that:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, . . . the parental obligation is a positive duty which requires affirmative performance.

**B.,N.M.**, 856 A.2d at 855 (citation omitted).

Furthermore,

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources

to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with [the child's] physical and emotional needs.

*Id.* (internal citations omitted).

Once a settled purpose of relinquishing parental rights or a failure to perform parental duties is established, "the court must engage in three lines of inquiry: (1) the parent's explanation for [the parent's] conduct; (2) the post-abandonment contact between [the] parent and [the] child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b)." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citation omitted).

The orphans' court determined that Paternal Grandparents had failed to meet their burden. The court explained:

The [c]ourt must examine the parents['] efforts to perform parental duties for the six month period preceding the filing of the Petition for Termination of Parental Rights:

Mother was incarcerated in Blair County from August 2020 to September 2020 and in SCI Cambridge Springs from September 2020 to September 2021. She wrote to the [C]hildren at least one time per week. It took [M]other until April of 2021 to establish phone contact with the [C]hildren through [Paternal Grandmother's] phone. She explained that [Paternal Grandfather's] phone was not accepted by the SCI. Mother provided the SCI call log to [Paternal Grandmother's] phone.

During [M]other's incarceration, [Paternal Grandparents] offered to bring the [C]hildren to the prison for visits but the facility was unable to arrange them. [Paternal Grandmother]

- 11 -

provided mother with an [i]Pad and money for continuing phone call contact with the [C]hildren. Mother testified that the call log reflects that the calls were short and inconsistent due to [Paternal Grandmother's] and the [C]hildren's schedule.

During [M]other's incarceration, she maintained the relationship with the [C]hildren based upon their established foundation. As a mother, she encouraged them to be themselves and reach their potential.

From September 2021 to November 2021, [M]other resided at [Renewal]. She communicated with the [C]hildren by phone and wrote letters. Mother's access improved slightly while she was at [Renewal] and she was able to talk to them two to three times per week. She also communicated two or three times via [Z]oom. Upon [M]other's discharge on November 1, 2021, [Paternal Grandfather] brought the [C]hildren to her.

During [M]other's incarceration she completed inpatient treatment. Upon release, she continued with counseling with CenClear. Mother was discharged [on] August 3, 2022. Mother's rehabilitation from drug use is a benefit to the [C]hildren.

Mother testified that she made past mistakes and did not provide for the [C]hildren. She believes that the [C]hildren need their mother as well as all the other people who love them and will continue to be a part of their lives. She has completed everything necessary to resume her role. She stayed involved in their lives while she was incarcerated and never severed the bond.

By Order of Court dated October 23, 2019, [Maternal Grandmother] was awarded custody of the [C]hildren every other weekend for one day. From November 1, 2021 to November 18, 2021, she and [Mother] exercised custody. [Maternal Grandmother] observed the strong bond and the obvious love the [C]hildren have for [Mother]. In her opinion, the criminal justice system succeeded for her daughter.

Orphans' Court Opinion (O.C.O.), 2/13/23, at 15-17 (record citations omitted) (style adjusted). The court noted that Mother "has had consistent and

continuous, albeit limited, contact with the [Children]." *Id.* at 30. The court believed "that the parents maintained contact with the [Children] and maintained the parent/child relationship." *Id.* at 33.

On appeal, Paternal Grandparents' contest the orphans' court's decision. They argue that from 2014 to 2021, the Children were removed from Mother's care twice, and she struggled with addiction, used drugs, was arrested multiple times, and was incarcerated. They assert that Mother failed to perform parental duties. Paternal Grandparents' Brief at 33. They argue that "[d]ue to addiction and incarceration, Mother was absent from the [C]hildren's lives for approximately two years." *Id.* at 29. Since the Children were placed with Paternal Grandparents in September 2019, Mother and Father have not provided any financial assistance, food, clothing, medical care, or shelter for the Children. *See id.* at 30-31. Paternal Grandparents claim that Mother failed to maintain any regular contact with the Children. *Id.* at 31.

Paternal Grandparents' argument fails to appreciate the standard of review we must apply to termination cases. We must accept the orphans' court's factual findings and credibility determinations if they are supported by the record. *See T.S.M.*, 71 A.3d at 267 (citation omitted). This is true even if the record could support an opposite result. *See id.*

Our review of the record supports the orphans' court's decision. Mother testified that she was emotionally involved in the Children's lives from August 2019 to November 2021. *See* N.T., 12/22/22, at 76. She talked to them on the phone as often as possible, sent written correspondence, and asked to

remain updated on their extracurricular activities and medical appointments. *See id.* Mother asserted that she tried the best she could given the circumstances she was in. *Id.* at 77.

Specifically, for most of the six-month statutory period at issue (May 2021 to November 2021), Mother was either incarcerated or at Renewal. Mother testified that she wrote to the Children approximately once a week; called them on the phone; and sent them mail, cards, and arts and crafts. *See id.* at 19-21, 66-67. Mother added the Children to her approved visitor list, but there was an issue with scheduling the visits, which Mother tried to investigate. *See id.* at 19-20. While at Renewal, Mother attempted to contact the Children daily, successfully talked to the Children two or three times a week, had two or three Zoom calls with them, and sent them written correspondence such as cards and gifts once a week. *See id.* at 27-28, 68.

Although Paternal Grandparents claim that Mother failed to maintain any regular contact with the Children, it was the orphans' court's job to weigh the evidence, make credibility determinations, and resolve any conflicts in the evidence. *See M.G.*, 855 A.2d at 73-74 (citation omitted). To the extent that Paternal Grandparents are asking us to reweigh the evidence and give greater credit to their claims and testimony than Mother's claims and testimony, we cannot do that. The orphans' court was free to believe all, part, or none of the evidence presented. *See id.*

Given Mother's efforts to maintain her relationship with the Children during the six-month statutory period, we cannot say that it was manifestly

unreasonable for the orphans' court to determine that Paternal Grandparents failed to meet their burden under Section 2511(a)(1). As an error correcting appellate court, we cannot search the record for contrary conclusions or substitute our judgment for that of the orphans' court. *See S.K.L.R.*, 256 A.3d at 1124. The orphans' court's findings are supported by the record; thus, we must accept them. *See T.S.M., supra*. Paternal Grandparents' first issue merits no relief.

Paternal Grandparents' second and third issues challenge the orphans' court's decision under Section 2511(a)(2). That subsection provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> [. . .]
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

To satisfy Section 2511(a)(2), the petitioning party must establish: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021) (citation omitted).

Moreover, grounds for termination under Section 2511(a)(2) "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." *Id.* (citation omitted). On this point, we emphasize that "[p]arents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." *Id*. (citation omitted).

Here, the orphans' court again determined that Paternal Grandparents had failed to meet their burden. The court noted:

> [A]lthough the February 13, 2023 Opinion and Order does not specifically discuss Section 2511(a)(2), it did make factual findings that belie the assertion that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. The [c]ourt found that Mother had tried to keep in contact with the [C]hildren while incarcerated and that she completed in-patient treatment and then continued counseling with CenClear. The [c]ourt specifically found that Mother's efforts were a benefit to the [C]hildren. This [c]ourt's own findings are in accord, specifically noting Mother's efforts to stay clean and sober. The [c]ourt finds that the conditions that led to Mother's prior dereliction have been substantially remedied by Mother and particularly applauds Mother going above and beyond to obtain a certification as a recovery specialist.

O.C.O., 8/9/24, at 7 (internal citation omitted).

On appeal, Paternal Grandparents argue that the same facts they outlined in their Section 2511(a)(1) argument also support terminating Mother's rights under (a)(2). Paternal Grandparents' Brief at 35. Specifically, they assert that from 2014 until Mother's release from incarceration her "conduct has caused the [C]hildren to be without essential parental care, control or subsistence necessary for their physical or mental well-being. Other

than her promises, her past conduct that led to the lack of essential parental care cannot or will not be remedied by her." *Id.* at 36. Paternal Grandparents argue that "Mother was only able to provide promises that she would be able to care for the [C]hildren in the future[,]" but the court must look at Mother's history dating back to 2014. *Id.* at 40.

Paternal Grandparents' argument again fails to appreciate the standard of review we must apply in termination cases. We must accept the orphans' court's factual findings and credibility determinations if they are supported by the record, even if the record could support an opposite result. *See T.S.M.*, 71 A.3d at 267 (citations omitted).

Here, the record supports the orphans' court's findings. The Children were removed from Mother's care due to her addiction, lack of stable housing, and failure to enroll L.T.B. in school. *See* N.T., 12/22/22, at 55-56. Mother made progress in remedying these concerns. While incarcerated and at Renewal, she successfully completed multiple drug and alcohol treatment programs. *See id.* at 7, 14-15, 75-76. She continued this treatment after being released. *See id.* at 14-15, 75-76. She has maintained her sobriety and is now a certified recovery and family recovery specialist. *See id.* at 75-76; *see also* N.T., 8/2/24, at 20-21. Mother also tried to maintain her relationship with the Children while incarcerated. N.T., 12/22/22, at 19. On December 22, 2022, Mother testified that she had housing and was employed. *Id.* at 4, 6. On August 2, 2024, Mother confirmed that she had the same

housing and employment, which she had maintained for almost three years. *See* N.T., 8/2/24, at 19. Mother received three promotions at her job. *Id.*

Therefore, there was competent evidence to support the determination that Mother has remedied the causes of her incapacity. Further, this evidence belies Paternal Grandparents' claim that Mother was only able to provide promises about the future. *See* Paternal Grandparents' Brief at 36, 40. Again, we emphasize that, as an error correcting appellate court, we cannot search the record for contrary conclusions or substitute our judgment for that of the orphans' court. *See S.K.L.R.*, 256 A.3d at 1124. Because the orphans' court's findings are supported by the record, we must accept them. *See T.S.M., supra*. Paternal Grandparents' second and third issues merit no relief.

Paternal Grandparents' fourth issue challenges the orphans' court's evidentiary decision regarding Mother's post-petition conduct. *See* Paternal Grandparents' Brief at 36-39.

Section 2511(b) of the Adoption Act provides:

> With respect to any petition filed pursuant to subsection **(a)(1), (6) or (8)**, the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b) (emphasis added). However, the court "may consider post-petition efforts if the efforts were initiated before the filing of the termination petition and continued after the petition date." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (citation omitted).

On appeal, Paternal Grandparents argue "since termination was appropriate under [Section]2511(a)(1), the [orphans'] court should not have considered actions that Mother took to remedy the situation after the petition was already filed." Paternal Grandparents' Brief at 37-38. Paternal Grandparents' counsel objected to this evidence at the hearing, and they assert the evidence should not have been admitted. *See id.* at 38-39.

Paternal Grandparents are mistaken. They overlook that their termination petitions were filed under Section 2511(a)(1) and (a)(2), not solely (a)(1). Section 2511(b) only limits the consideration of post-petition efforts for petitions filed pursuant to (a)(1), (6), and (8), not (a)(2). Thus, the orphans' court did not err by allowing Mother to present evidence of her post-petition actions because the court was permitted to consider that evidence under (a)(2). *See Interest of P.A.B.*, 315 A.3d 68, **6 (Pa. Super. 2024) (unpublished memorandum) ("[W]ith respect to DHS's argument that the limitation on consideration of post-petition conduct also applies to subsections (a)(2) and (5), which are not included in the aforementioned proviso of subsection (b), we reject this contention. Section 2511(b) clearly limits its effect to certain grounds for termination under Section 2511(a), and there is nothing in the text of the statute indicating that a petitioner's decision to proceed under subsection (a)(1), (6) or (8)—the grounds for termination mentioned in subsection (b)—requires that the trial court not consider conduct first initiated after the petitions' filing as relevant to any other subsection (a) ground for termination included in that same petition.").

The orphans' court's opinions do not indicate that the court improperly considered post-petition efforts in its Section 2511(a)(1) analysis. The court mentions that after being released from incarceration, Mother continued drug and alcohol treatment with CenClear and was discharged in August 2022. **See** O.C.O., 2/13/23, at 16. Although this occurred after the termination petitions were filed, the record indicates that Mother began other drug and alcohol treatment before the filing date. Thus, arguably, the orphans' court could have properly considered this evidence under (a)(1) as a continuation of efforts initiated before the petitions' filing. **See Z.P.**, 994 A.2d at 1121.

However, even if the court improperly considered Mother's treatment at CenClear or other post-petition conduct under (a)(1), we did not consider that evidence in our analysis. Nevertheless, there was still sufficient evidence of pre-petition conduct to support the court's decision, as discussed above. **See P.A.B.**, 315 A.3d at **6 ("Accordingly, to the extent the trial court considered Mother's conduct initiated after [the termination petitions' filing date] in its analysis under subsections (a)(1) and (8), we will disregard that evidence and focus on whether there was sufficient additional support for the trial court's determination that DHS did not meet its burden of proof on those grounds.").

Additionally, the orphans' court noted "[t]estimony of contact after filing the [termination petitions] . . . is relevant to the extent it is a continuation of [M]other's efforts, failures, and successes in recovering from her addiction." O.C.O., 2/13/23, at 32. The court went on, "[d]uring this period, [Mother] did not provide essential parental care, control, or subsistence; however, the

causes of the incapacity can and will be remedied." *Id.* This indicates that the orphans' court properly considered post-petition efforts in its analysis of Section 2511(a)(2). Paternal Grandparents' fourth issue merits no relief.

Paternal Grandparents' address their fifth and sixth issues together in their brief, and both issues relate to the orphans' court's decision under Section 2511(b). However, it is well established that a court only needs to analyze Section 2511(b) if the court first finds that the parent's conduct warrants termination under Section 2511(a). *See C.M.K., supra*. Here, because the court concluded that termination was not warranted under Section 2511(a), it did not need to move to the Section 2511(b) analysis. Similarly, because we have determined that the court did not err or abuse its discretion under Section 2511(a), we need not analyze Section 2511(b). Thus, we need not address Paternal Grandparents' fifth and sixth issues.

Paternal Grandparents' seventh issue relates to the appointment of legal counsel for the Children. Section 2313(a) of the Adoption Act provides:

> **(a) Child.--**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S.A. § 2313(a).

Our Supreme Court "has interpreted this section as requiring that the [orphans'] court appoint an attorney to represent the child's legal interests,

- 21 -

*i.e.*, the child's preferred outcome." ***In re Adoption of K.M.G.***, 240 A.3d 1218, 1235 (Pa. 2020) (citation and internal quotation marks omitted).[5] The Court has further instructed that "a single attorney cannot represent a child's best interests and legal interests if those interests conflict[,]" and "the orphans' court must determine whether counsel can represent the dual interests before appointing an individual to serve as [guardian ad litem]/[c]ounsel for a child." ***Id.*** at 1236 (citation omitted).

"The question of whether there exists a conflict between legal counsel and a guardian *ad litem* is a mixed question of fact and law, subject to review for an abuse of discretion" or an error of law. ***In re P.G.F***, 247 A.3d 955, 961 n.4 (Pa. 2021). Appellate courts must "accept the findings of fact and credibility determinations of the orphans' court if they are supported by the record." ***Id.*** (citation omitted). "A decision may be reversed for an abuse of discretion only upon a showing of unreasonableness, partiality, prejudice, bias, or ill-will" but may not be reversed simply because the record would support a different result. ***Id.*** (citations omitted). "[A]n appellate court

---

[5] A child's legal interests are distinct from his or her best interests. ***See In re T.S.***, 192 A.3d 1080, 1082 n.2 (Pa. 2018) ("'Legal interests' denotes that an attorney is to express the child's wishes to the court regardless of whether the attorney agrees with the child's recommendation. 'Best interests' denotes that a guardian *ad litem* is to express what the guardian *ad litem* believes is best for the child's care, protection, safety, and wholesome physical and mental development regardless of whether the child agrees.") (citations omitted); ***In re Adoption of L.B.M.***, 161 A.3d 172, 174 (Pa. 2017) ("In cases involving children, the law acknowledges two separate and distinct categories of interest: a child's legal interests, which are synonymous with the child's preferred outcome, and a child's best interests, which the trial court must determine.") (footnotes omitted).

should give substantial deference to the orphans' court's determination regarding whether the interests of legal counsel and guardian *ad litem* conflict, especially where the court has witnessed the parties during numerous proceedings." **Id.** at 967 (citation omitted).

In its opinion, the orphans' court explained:

> This [c]ourt's task on remand from the Superior Court was to ascertain if there had been a conflict between each child's best interests and legal interests. This [c]ourt, in an abundance of caution in so ascertaining, appointed separate legal counsel for the [C]hildren. Having done so, and having heard from the [C]hildren themselves as well as the [guardian *ad litem*] and their legal counsel, the [c]ourt concludes that there had been no conflict between each child's best interests and their respective legal interests.

O.C.O., 8/9/24, at 4. The court also found no conflict in Attorney Bistline acting as both guardian *ad litem* and counsel for the Children. **Id.** at 7.

On appeal, Paternal Grandparents first argue that the orphans' court failed to determine if Attorney Bistline could represent the best and legal interests of the Children without conflict. Paternal Grandparents' Brief at 60. They claim the court circumvented that determination by appointing Attorney Hooper to represent the Children's legal interests. **Id.**

We disagree. The orphans' court's August 9, 2024 Opinion and Order belies Paternal Grandparents' claim that the court failed to make a conflict determination. **See** O.C.O., 8/9/24, at 4 ("the [c]ourt concludes that there had been no conflict between each child's best interests and their respective legal interests"); **see also id.** at 7 ("this [c]ourt finds that there was no

conflict in legal and best interests of the [C]hildren, and the dual role of Attorney Bistline in acting as [guardian *ad litem*] and attorney for the [C]hildren"); *see also* Orphans' Court Order, 8/9/24 ("Attorney Bistline shall act as [guardian *ad litem*] and counsel for the [C]hildren"). Additionally, the orphans' court explained that it appointed Attorney Hooper out of an abundance of caution to aid in its conflict determination. *See* O.C.O., 8/9/24, at 4 ("This [c]ourt, in an abundance of caution in so ascertaining [if there was a conflict], appointed separate legal counsel for the [C]hildren."); *see also id.* at 7-8 ("In order to make sure that there was no conflict, the [c]ourt appointed Attorney Hooper as attorney for the [C]hildren on remand . . . .").

Alternatively, Paternal Grandparents argue that if the orphans' court accepted Attorney Bistline as both guardian *ad litem* and counsel, it failed to conduct a prior conflict analysis. Paternal Grandparents' Brief at 60. However, that issue is of no moment now because we remanded the case to have the court determine if there was a conflict, and the court made that determination.

Paternal Grandparents next argue that Attorney Hooper's representation of the Children was insufficient because he only interviewed the Children and submitted two letters to the court. *See id.* at 61. We disagree and are not persuaded by Paternal Grandparents' analogy to this Court's decision in *Interest of H.H.N.* In *H.H.N.*, the trial court appointed a separate attorney to serve as the children's legal counsel for the termination proceedings but then dismissed the attorney from the hearing. *See Interest of H.H.N.*, 296

- 24 -

A.3d 1258, 1260-61 (Pa. Super. 2023). Here, however, unlike in **H.H.N.**, Attorney Hooper was only appointed to represent the Children for a limited period to aid in the orphans' court's conflict determination. Ultimately, the court determined there was no conflict. Thus, Attorney Bistline had dually represented the Children throughout the termination proceedings.

Lastly, Paternal Grandparents assert that the orphans' court erred and/or abused its discretion by finding that there was no conflict between the Children's best and legal interests. Paternal Grandparents' Brief at 63. Mother has filed a motion for custody modification, and Paternal Grandparents argue there was no evidence that the Children knew the custody litigation could result in Mother receiving physical custody. **See id.** Instead, the only way to ensure the Children continue living with Paternal Grandparents was to grant termination. **Id.** Attorney Hooper's letter indicated that the Children were generally ignorant about the legal proceedings, which Paternal Grandparents equate to a failure of counsel to advocate for the Children's legal interests. **See id.** at 64-65. Paternal Grandparents assert that the differences in Attorney Bistline's and Attorney Hooper's reports indicate that there may have been a conflict. **Id.** at 66.

This argument once again fails to appreciate our standard of review. As noted above, we must accept the orphans' court's findings of fact and credibility determinations if they are supported by the record. **P.G.F.**, 27 A.3d

at 961 n.4 (citation omitted). We cannot reverse simply because the record would support a different result. *See id.*

The orphans' court's determination is supported by the record. In its opinion, the court noted it was clear that the Children wanted to maintain the status quo, *i.e.*, living with Paternal Grandparents but maintaining a bond and spending time with Mother and Maternal Grandmother. *See* O.C.O., 8/9/24, at 4-5. The court stated that the "[C]hildren clearly have a natural bond, love and affection for Mother, Father, and [M]aternal [G]randmother." *Id.* at 5. Although L.T.B. told the court he was "leaning toward" adoption, the court believed that this was only because he believed it would provide him more flexibility in scheduling visits. *Id.* at 4-5. The technical legal issues of termination and custody were beyond K.P.F.'s understanding. *Id.* at 5.

The certified record contains a transcript from the court's original interviews with the Children on December 14, 2022, which also supports the court's findings. K.P.F. said he wanted to spend more time with Mother and Maternal Grandmother. N.T., 12/14/22, at 21. He sometimes wanted to stay over at Mother's house, where he had a room with stuffed animals. *Id.* at 13-14. L.T.B. stated that it "would be pretty cool" to be able to stay overnight at Mother's house. *Id.* at 31-32. Seeing Mother and Maternal Grandmother every other week was "pretty important" to him, and he really enjoyed spending time with them and liked seeing them. *Id.* at 41.

Additionally, Attorney Hooper's letters support the court's findings. His first letter stated that the Children "expressed a genuine desire to continue to have a relationship with [Mother] and to visit with her[,]" and this was also true of Father. Remand Exhibit 1 at 1 (unnumbered). His second letter stated that the Children "do not wish any change in the current status quo." Remand Exhibit 3 at 1 (unnumbered). Attorney Bistline's letter as guardian *ad litem* stated that the petitions should be denied. **See** Remand Exhibit 2.

Thus, the evidence supports the court's determination that there was no conflict and that the Children's best and legal interests were to deny the termination petitions. Otherwise, the Children would lose all legal ties to Mother and Father. **See In re Adoption of C.M.**, 255 A.3d 343, 362 (Pa. 2021) ("We acknowledge the solemn reality that a decree terminating parental rights is widely regarded as the civil law equivalent to the death penalty, forever obliterating the fundamental legal relationships between parent and child.") (citations omitted). We acknowledge that there was contrary testimony from Paternal Grandparents, who indicated that the Children wanted to be adopted if they were still able to visit Mother and Father. **See** N.T., 8/2/24, at 5, 9, 11. However, it was the role of the orphan's court, not this Court, to weigh the evidence and make credibility determinations. **See M.G., supra**. We must give substantial deference to the court's conflict determination. **See P.G.F.**, **supra**. Paternal Grandparents' final issue merits no relief.

In sum, we discern no error of law or abuse of discretion in the orphans' court's decision to deny termination of Mother's parental rights under Section 2511(a)(1) and (a)(2). Because we affirm the court's decision under Section 2511(a), we need not address Paternal Grandparents' issues related to Section 2511(b). Additionally, we discern no error of law or abuse of discretion regarding the Children's representation.

Orders affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

3/26/2025